UNITED STATES of America,
Plaintiff-Appellee,

v.

Gilbert RIVERA and Albert Saul Platt,
Defendants-Appellants.

No. 84–7754.

United States Court of Appeals,
Eleventh Circuit.

Nov. 15, 1985.

Erskine R. Mathis, Birmingham, Ala., for Rivera.

J. Stephen Salter, Groenedyke & Salter, Birmingham, Ala., David Goodhart, Goodhart & Rosner, P.A., Miami, Fla., for Platt.

Frank Donaldson, U.S. Atty., John C. Earnerest, Jr., Asst. U.S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before VANCE and HENDERSON, Circuit Judges, and DYER, Senior Circuit Judge.

DYER, Senior Circuit Judge:

Platt and Rivera appeal their convictions for aiding and abetting in possessing, with intent to distribute, approximately 100,000 Methaqualone tablets (commonly known as quaaludes) (Count 1). Platt appeals his conviction for using a telephone, on nine occasions, to cause and facilitate the possession of quaaludes with intent to distribute them (Counts 2–10). Platt asserts that the testimony of Weiss, the principal government witness, is incredible or unsubstantial on its face, that the district court erred in finding sufficient evidence to submit to the jury the nine telephone counts, and that the improper remarks of the prosecutor mandates reversal. He joins his co-defendant Rivera in asserting that it was error for the district court to rule that the government could impeach the testimony of Mogell, one of Platt's witnesses, thus requiring Platt to move to strike the testimony of this witness. Rivera also claims error in the district court's refusal to grant him a severance. We disagree with the contentions of both Platt and Rivera as to Count 1 and affirm as to both defendants. We agree with Platt that there is insufficient evidence to sustain his conviction on

the nine telephone counts and reverse as to these.

In 1981 Weiss was a dealer in illicit drugs. He met with Platt, Mogell and others in Miami, Florida to negotiate a deal. He had a pill making machine, and as a part of the deal the machine was to be transferred as collateral to Platt who was to provide approximately 350,000 methaqualone tablets to Weiss. They agreed how the pills would be sold and how the proceeds would be divided. Weiss said he could move the pills quickly through his contacts in Indiana. He contacted Rivera and instructed him to meet them in Ft. Lauderdale, Florida. Rivera did so and thereafter transported the quaaludes to Gary, Indiana. Sales went slowly there, but an undercover agent led Weiss to believe he could arrange a sale for the quaaludes in the Gadsden, Alabama area. Weiss went to a Ramada Inn in Atalla, Alabama, a Gadsden suburb, and Platt remained in Birmingham. The nine telephone calls in question were from Platt in Birmingham to Weiss in Atalla with one exception when Jackson, an undercover agent, answered the telephone in Weiss' room.

Platt ultimately told Weiss that they could sell the quaaludes to a customer in the Tampa, Florida area. They returned to Florida, but Weiss was arrested in Broward County, Florida after he attempted to sell quaaludes to an undercover police officer.

## WEISS' TESTIMONY

Platt argues that the combination of four factors show that Weiss' testimony was incredible. They are (1) the preferential treatment accorded Weiss by the federal government in disposing of numerous drug related convictions, (2) Weiss' perjurious character, (3) previous felonious acts by Weiss, and (4) defense evidence that undermines the testimony of Weiss.

■ There can be no doubt that Weiss was a drug dealer and an outlaw. He had been involved in several drug trafficking schemes. He entered into a plea agreement with the government on the present charges. The charge that Weiss perjured himself or that the defense evidence undermined Weiss' testimony, while bearing on Weiss' credibility are not factors in determining incredibility as a matter of law and were certainly matters wholly within the province of the jury. For testimony of a government witness to be incredible as a matter of law, it must be "unbelievable on its face." *United States v. Cravero*, 530 F.2d 666, 670 (5th Cir.1976). Further, "the fact that [the witness] has consistently lied in the past, engaged in various criminal activities, thought that his testimony would benefit him, and showed elements of mental instability does not make his testimony incredible." *Id.* In *United States v. Garner*, 581 F.2d 481 (5th Cir.1978) the court underlined the stringent rule that "for the testimony to be considered incredible, 'it must be unbelievable on its face', i.e., testimony as to 'facts that [the witness] physically could not have possibly observed or events that could not have occurred under the laws of nature.'" *Id.* at 485. (quoting *Cravero*, 530 F.2d at 670).

■ Under this test, Weiss' testimony was not incredible as a matter of law. A judgment of acquittal "is not required because the government's case includes testimony by 'an array of scoundrels, liars and brigands.'" *United States v. Hewitt*, 663 F.2d 1381, 1385 (11th Cir.1981), quoting *United States v. Tiche*, 424 F.Supp. 996, 1000–01 (W.D.Pa.), *aff'd mem.*, 564 F.2d 90 (3rd Cir.1977). The jury's decision as to the credibility of Weiss will not be disturbed on appeal. *United States v. Palacios*, 612 F.2d 972, 973 (5th Cir.1980); *United States v. Hewitt*, 663 F.2d at 1386. Moreover, there was extensive corroboration of Weiss' testimony by witness Smith as to the meetings with Platt, the drug conversations and schemes, the agreement to purchase and distribute quaaludes, Platt's possession of Weiss' pill machine as collateral, the purchase of cheap suitcases in which to carry the quaaludes, and the travel together of Platt and Weiss. Jackson, an undercover operator (which Weiss did not know) recorded many conversations with Weiss in which numerous references are made to Platt and Rivero. Finally, the

motel registration signed by Platt at the Ramada Inn in Birmingham and the record of telephone calls made from there to Weiss gave corroborative substance to Weiss' testimony.

In the face of extensive impeachment of Weiss on cross examination concerning Weiss' bad acts and bad character the jury chose to believe him. There the matter ends.

## THE TELEPHONE CALLS

■ Counts Two through Ten of the Indictment charged Platt with using a telephone in Birmingham to call Weiss in Atalla, Alabama to cause and facilitate the felony of possession with intent to distribute methaqualone pills in violation of 21 U.S.C. §§ 841(a)(1) and 843(b) (1976). Each count specified an exact time on June 27, 1981 that the calls were made. On one occasion (but without proof of which of the nine calls it was) undercover agent Jackson was in Weiss' room and answered a call from Platt in Weiss' absence. All that Platt said was that he needed to talk with Weiss right away. Other than this call the government's proof was that Platt called Weiss numerous times, but the calls were never identified as having been made at the precise times set forth in the indictment. The most incriminating evidence the government produced was that all calls were substantially the same, and in each one of them Platt asked Weiss "how are we doing with sales, and where is the money?" Given the fact that in our review of the sufficiency of the evidence it, and all reasonable inferences therefrom, must be viewed in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942), and that our determination is limited to whether a reasonably minded jury must necessarily entertain a reasonable doubt of Platt's guilt, *United States v. Rodriguez*, 654 F.2d 315, 317 (5th Cir.1981); *United States v. Bulman*, 667 F.2d 1374, 1377 (11th Cir.), *cert. denied*, 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982), we conclude that the evidence adduced by the government on Counts 2–10 was insufficient to sustain a guilty verdict.

The government relies on *United States v. Phillips*, 664 F.2d 971 (5th Cir.1981) (Unit B), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982) and *United States v. McLernon*, 746 F.2d 1098 (6th Cir.1984). In *Phillips* the court concluded that the evidence taken in context and in its totality showed that defendant Myers had a connection with a load of marijuana and that he gave assurances to co-defendant Meinster about the resolution of the problem of quickly disposing of the marijuana. This was sufficient to show that Myers' conversation with Meinster had the unlawful purpose of facilitating the commission of the illegal possession with intent to distribute. The court pointed out that:

[i]n order to prove a violation of 21 U.S.C.A. § 843(b), the Government must establish that the defendant knowingly and intentionally used a communications facility, *e.g.*, a telephone, to facilitate the commission of a narcotics offense. *United States v. Rey*, 641 F.2d 222, 224 n. 6 (5th Cir.1981). In order to establish the facilitation element, the Government must show that the telephone call comes within the common meaning of facilitate —'to make easier' or less difficult, or to assist or aid. *United States v. Watson*, 594 F.2d 1330, 1343 (10th Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979).

664 F.2d at 1032.

We agree with the court's definition of "facilitation," and its finding, under the facts in *Phillips*, that facilitation was proved. But here, Platt's calls were simply to find out whether any sales had been made, and if so where was the money he was supposed to get. We fail to see how Platt's calls can be said to make easier or less difficult, or to assist or aid the possession with intent to distribute the methaqualone pills.

■ In *McLernon* the court held that the several telephone conversations must be considered in context and that in six calls the defendant Valdez "either informed the agents of the progress of the deal or of

the next step in the transaction." 746 F.2d at 1106. Those calls taken together were held to be sufficient to uphold the conviction. In the case *sub judice,* however, Platt's communications were an attempt to find out how the deal was progressing so he could get his money. We hold that this is not proof of "facilitation" and Counts 2–10 must fall.

## THE PROSECUTOR'S REMARKS

Defense witness Cacciatore was a detective who had arrested both Weiss and government witness Smith for the sale of over one hundred thousand quaaludes to him in his undercover role. Under cross examination he testified that this was the largest pill case ever made in his department and was a "record." On redirect examination Cacciatore was asked why this case was so unique that he did not have to rely on his notes. His response was that this was the largest hand to hand purchase ever accomplished by an undercover agent in the Sheriff's Department. The following then ensued:

Q. You're the record holder?

A. I guess you would say so.

Q. You and Don Weiss and Walter Smith?

A. That's correct.

Ms. Powell (government prosecutor): And Mr. Platt.

Defense counsel moved for a mistrial. Ms. Powell apologized. The court stated that it was an improper remark but that there was not that much harm done by it and denied the motion for a mistrial.

▆▆▆ There is no doubt that the remark "And Mr. Platt" was improper, but we do not agree with Platt's argument that it was reversible error. The touchstone of due process analysis in such a case is the fairness of the trial not the culpability of the prosecutor. *Smith v. Phillips,* 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78, 87 (1982). The prosecutor's isolated remark cannot be said to have inflamed or appealed to the passion of the jury. Nor did it refer to anything which was not in evidence or which was unknown to, or previously unheard by the jury. Viewed in the context of the entire trial, the remark did not prejudice the substantial rights of Platt, and at best was harmless error. *Berger v. United States,* 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314, 1318 (1935), *United States v. Esle,* 743 F.2d 1465, 1477 (11th Cir.1984).

## THE STRIKING OF DEFENSE WITNESS MOGELL'S EVIDENCE

Platt's first witness was Mogell, a close friend of Platt's for a number of years. Mogell testified that the only connection between Platt, Weiss, Smith and Mogell had to do with setting up a business association for the sale of carpets. The meetings that they had dealt only with the carpet business and did not have anything to do with quaaludes, their distribution or any other illicit drug activity. He emphasized that drugs were never discussed and, had the subject even been mentioned, he would have immediately departed. After Mogell's direct testimony, the prosecution made the court aware that the government had tape recordings of Mogell in which he discussed the purchase of up to 50,000 quaaludes in Florida, that he admitted purchasing quaaludes on numerous occasions, discussed his drug sale procedure, the identity of his contacts for drug sales, and the transportation of quaaludes from Florida to other states without detection. The government proposed to cross examine Mogell concerning these conversations to impeach his credibility regarding his testimony that no drug transactions were discussed at any meetings with Platt, Weiss, and Smith and that if drugs had been mentioned he would have immediately left. The court ruled that the government could question Mogell about these matters. In chambers the court informed Mogell that the government could cross examine him about the tapes, instructed him concerning his fifth amendment rights and advised him to contact a lawyer. The government proposed giving Mogell an opportunity to recant. After Mogell conferred with his attorney he indicated that he would not recant and would invoke his fifth amendment privilege. At this juncture Platt moved to strike Mogell's testimony. Rivera's coun-

sel joined Platt's argument that the testimony should be stricken. Over the government's objection the testimony was stricken and the jury instructed to ignore anything Mogell said.

■ Although Mogell's testimony was stricken on the motion of Platt, he argues, without benefit of citation of any authority, that this, in some inexplicable way, prejudiced Platt's right to a fair trial. Suffice it to say that we are unimpressed by the argument that although the district court granted the relief requested by Platt, he can argue on appeal that this was somehow error, or that the district court should not have permitted the government to cross examine Mogell for the purpose of impeaching him. Such a ruling would have placed the government in a grossly unfair position and would have led the jury to mistakenly believe that Mogell was a lily white witness.

Rivera's contention that this series of events in some way denied him due process is wholly without merit. Equally unimpressive are his arguments that this issue is one involving improper impeachment of Mogell regarding his arrest on a non-related drug charge or that this somehow involves extrinsic evidence under *Fed.R. Evid.* 404(b). There was no impeachment of Mogell as to his prior drug conversations and his credibility on those matters was not attacked. In any event Mogell did testify that he did not know Rivera and had never seen him before. Finally, Rivera's counsel not only did not object to striking Mogell's testimony, he argued strenuously that the district court should do so. Rivera's arguments on this issue have no merit.

RIVERA'S MOTION FOR SEVERANCE

One week after trial commenced, Rivera moved for a severance. As grounds he asserted the then unresolved situation regarding Mogell and the resulting possibility of a spill over effect on Rivera, even though Mogell had testified that he did not know Rivera. The district court denied the motion.

■ Whether a motion for severance should be granted is governed by *Fed.R.*

*Crim.P.* 14 which provides in part that if a defendant is prejudiced by a joinder of defendants in an indictment, the court may grant a severance. Unless a defendant can establish that he was subjected to compelling prejudice against which the district court could not afford protection, persons indicted together should be tried together. *United States v. Harper,* 680 F.2d 731, 733 (11th Cir.) (citations omitted), *cert. denied,* 459 U.S. 916, 103 S.Ct. 229, 74 L.Ed.2d 182 (1982); *United States v. McCulley,* 673 F.2d 346, 349 (11th Cir.), *cert. denied,* 459 U.S. 852, 103 S.Ct. 116, 74 L.Ed.2d 102 (1982); *United States v. Kabbaby,* 672 F.2d 857, 861 (11th Cir.1982). Here there was no confusion of evidence between the two defendants. Rivera's "spill over" argument is imaginative and unsupported in light of the fact Mogell never mentioned Rivera except to say that he did not know him. Moreover, the district court gave clear instructions concerning the separate treatment to be accorded each defendant. Under the circumstances of this case, it was, as a practical matter, within the capacity of the jury to follow the admonitory instructions of the court, and the mere fact that Rivera might have had a better chance of acquittal if he had been tried at a separate trial is not compelling prejudice. *United States v. Hewes,* 729 F.2d 1302, 1319 (11th Cir.1984), (citation omitted), *cert. denied,* — U.S. —, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985); *see United States v. Marszalkowski,* 669 F.2d 655 (11th Cir.), *cert. denied,* 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 167 (1982). The decision of whether to sever is within the sound discretion of the district court, *United States v. Kopituk,* 690 F.2d 1289, 1314–15 (11th Cir.1982) (citations omitted), *cert. denied,* 463 U.S. 1209, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983). There was no abuse of discretion in denying Rivera's motion for a severance.

The judgment of conviction of Platt and Rivera on Count 1 of the indictment is affirmed. The judgment of conviction of Platt on Counts 2–10 of the indictment is reversed.

AFFIRMED in part and REVERSED in part.