[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 10, 2005
THOMAS K. KAHN
CLERK

No. 04-10343
Non-Argument Calendar
_____

D.C. Docket No. 03-60002-CR-JIC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LANETTE BLACK,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

(June 10, 2005)

Before BIRCH, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Lanette Black was indicted for conspiracy to commit wire fraud in connection with her involvement in a telemarketing scheme for debt consolidation services, in violation of 18 U.S.C. §§ 371 and 1343.

At trial, James Michael Christensen testified that he had recruited Black to work for Amansco, one of two companies he created as part of a debt-consolidation scam. He explained that Amansco received referrals from his other company, Franklin Credit. Franklin Credit would "approve" customers for the program for a one-time "fee." Christensen testified that he created different "pitches" for the employees to use to mislead clients, and that he monitored Black's phone calls at first to ensure that she used the pitch correctly. The purpose of Black's pitch was to make the client believe they had received a loan until they made the first payment, which Amansco would keep as a second fee, and then tell the client the truth about the first payment. According to Christensen, Black knew of the scam from the beginning and she knew that the object of the pitch was to mislead customers into enrolling in the program. He stated that Black never complained about the scam or contacted authorities. Christensen testified that Black was paid on commission out of that first payment based on the number of customers she enrolled.

Several employees of Franklin Credit and Amansco testified that they knew they were involved in fraud. At least one other employee overheard Black complain when she received too few referrals from Franklin, indicating that she knew of the fraud.

Several clients testified that they had been mislead about the program, that they had been told that the first payment would go to creditors minus a small fee, and that the creditors were never paid. One client testified that she called Black after learning that her creditors had not been paid, but that Black said the creditors were lying. She stated that Black convinced her that it was in her best interest to remain with the program. Another client, suspicious of the program, agreed to cooperate with authorities by taping conversations between herself and Black. During these conversations, Black denied any knowledge of who owned the company.

After the government rested its case-in-chief, the district court denied Black's motion for judgment of acquittal.

Testifying in her own defense, Black denied that she had any involvement with fraud or that she knew the program was a scam. According to Black, there was no "pitch." Black stated that she only processed the paperwork, although she admitted that she was the only Amansco employee paid on commission, that she

3

earned over $100,000 in one year, and that she knew Christensen owned both companies. Black further admitted that she received numerous complaints from clients who were misled by Franklin Credit employees, but she explained that she thought the employees were doing this behind Christensen's back. She stated that, until the end, she believed Christensen was acting properly. Black admitted that, when she was arrested, she said "I knew it," but she explained that she meant she knew the brokers were misleading clients without Christensen's knowledge. Black denied that any of Christensen's testimony was credible, and she stated that he had conned her like he conned everyone else.

Black rested, and the government did not offer a rebuttal. Black renewed her motion for judgment of acquittal, which the court denied.

The court instructed the jury that, to find Black guilty of conspiracy, it had to conclude that she knowingly agreed to defraud, and that mere presence or negligence were not enough. The jury convicted Black of conspiracy.

Black moved for judgment of acquittal, or, alternatively, a new trial, which the court denied. The court sentenced Black to forty-six months imprisonment,

three years supervised release, and ordered restitution in the amount of $87,202.30.[1]

We review de novo whether the evidence was sufficient to support a conviction, viewing the record in the light most favorable to the verdict and drawing all reasonable inferences and resolving all questions of credibility in favor of the government. Accordingly, we will affirm the conviction if a reasonable juror could conclude that the evidence establishes guilt beyond a reasonable doubt. United States v. Hasson, 333 F.3d 1264, 1270 (11th Cir. 2003), cert. denied, 124 S.Ct. 2195 (2004).

To establish wire fraud under 18 U.S.C. § 1343, the government must show (1) intentional participation in a scheme to defraud and (2) use of the interstate wires in furtherance of the scheme.[2] Id. To establish a conspiracy under 18 U.S.C. § 371, the government must show (1) an agreement among two or more persons to achieve an unlawful objective; (2) knowing and voluntary participation

---

[1] Black does not challenge the constitutionality of her sentence under the recent Supreme Court decision in United States v. Booker, 543 U.S. –, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Because she did not challenge her sentence in the district court or this court, she has abandoned this issue. See United States v. Dockery, 401 F.3d 1261, 1262-63 (11th Cir. 2005).

[2] Black does not challenge the existence of a conspiracy or that the offense involved the use of wires in furtherance of the conspiracy. She challenges only whether there was sufficient evidence to show her knowledge of and participation in the scheme.

5

in the agreement; and (3) an overt act by a conspirator in furtherance of the agreement.  Id.

On appeal, Black argues that the evidence was insufficient to show her knowing and voluntary participation in the scheme.

Participation may be inferred from circumstantial evidence.  United States v. Ross, 131 F.3d 970, 980 (11th Cir. 1997).  The credibility of a witness is within the jury's determination, and challenges to the veracity of a witness will not establish insufficiency of the evidence.  United States v. McCrimmon, 362 F.3d 725, 730 (11th Cir. 2004) (upholding conviction based on ringleader's testimony that the defendant was aware of and participated in the scheme, finding that credibility determinations were the role of the jury).  This court must accept the jury's credibility determinations unless the testimony was incredible on its face. See United States v. Chastain, 198 F.3d 1338, 1351 (11th Cir. 1999); United States v. Rivera, 775 F.2d 1559, 1561 (11th Cir. 1985).  When the defendant chooses to testify, she runs the risk that she will bolster the government's case, and an implausible explanation may be evidence to support the jury's verdict.  See United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995); United States v. Bennett, 848 F.2d 1134, 1139 (11th Cir. 1988).

After a thorough review of the record, and viewing the evidence in the light most favorable to the government, we conclude that the evidence was sufficient to establish Black's knowledge of and participation in the conspiracy. By choosing to testify, Black ran the risk that the jury would believe Christensen and disbelieve her. Accordingly, we AFFIRM.