[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 25, 2008
THOMAS K. KAHN
CLERK

No. 07-12173
Non-Argument Calendar

_____

D. C. Docket No. 06-00135-CR-ORL-31-DAB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSEPH LEE HOLMES, JR.,
a.k.a. Joseph Lee Holmes,
a.k.a. Joseph L. Holmes,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 25, 2008)

Before BIRCH, DUBINA and PRYOR, Circuit Judges.

PER CURIAM:

Joseph Holmes appeals his convictions for drug and firearms offenses.  See 18 U.S.C. §§ 2, 922(g)(1), 924(a)(2), (c), (e)(1); 21 U.S.C. §§ 841(a), (b)(1)(B)(iii), (b)(1)(C), 846.  He challenges the sufficiency of the evidence underlying these convictions and evidentiary rulings made by the district court. We affirm.

## I. BACKGROUND

Detective Trevor Shaffer of the Melbourne Police Department received a tip regarding drug activity and the use of guns by Holmes and others at 2426 Stone Street, Holmes's residence.  The police opened an investigation and conducted surveillance to verify the tip.  Based on the information gathered, the police obtained a search warrant for the residence.

Detective Ameigh conducted surveillance of the residence before the police executed the warrant.  When he arrived, Ameigh saw through the open back door a canister of baking soda sitting next the stove.  Ameigh watched Jonathan Johnson blow on a substance cooking in a pot and stir in a white substance from a clear plastic bag.  Ameigh observed several individuals approach the back door of the Stone Street residence while Holmes was inside the house and exchange cash for what appeared to be crack cocaine and noted that, when Holmes left the residence, the traffic ceased.  Ameigh noticed a man outside the residence who was using a

2

two-way radio and appeared to be conducting counter-surveillance.

Officer Cyril Hopping executed the search warrant and discovered Holmes, Johnson, and Angel Nelson, Holmes's girlfriend, at the residence. When he saw the police, Holmes discarded a package of cigarettes that contained a piece of crack cocaine and a bag of powder cocaine. After Officer Schaffer read the search warrant, Holmes volunteered, "I just stopped by here to, you know, see a friend." Officer Michael Sampieri later searched Holmes and discovered a folded dollar bill that contained marijuana.

Inside the house, the officers found multiple loaded guns, ammunition, a two-way radio, a video surveillance system, a Crown Royal bag that contained several bags of crack cocaine, evidence of crack cocaine "cooking," a digital scale, and a small bag of powder cocaine. The officers seized a second two-way radio from "lookout" Tony Watkins that matched the frequency of the unit found inside the residence. Officers discovered mail that was addressed to Holmes in one of the bedrooms concealed under a mattress. Residue in a plastic bag retrieved from the trash and on the stovetop tested positive for cocaine. Later forensic examination of the evidence established that the officers seized 16.3 grams of powder hydrochloride and 36.8 grams of crack cocaine from the Stone Street residence.

Holmes was charged in a five-count indictment with (1) conspiracy to

3

possess with intent to distribute five or more grams of crack cocaine and cocaine hydrochloride, 21 U.S.C. § 846; (2) aiding and abetting the distribution of five or more grams of crack cocaine, 18 U.S.C. § 2; 21 U.S.C. §§ 841(a), (b)(1)(B)(iii); (3) aiding and abetting the distribution of a detectable amount of cocaine hydrochloride, 18 U.S.C. § 2; 21 U.S.C. §§ 841(a), (b)(1)(C); (4) aiding and abetting the using and carrying of a firearm during and in relation to, and possessing a firearm in furtherance of, a drug trafficking crime, 18 U.S.C. §§ 2, 924(c); and (5) possession of firearms and ammunition as a convicted felon, 18 U.S.C. §§ 922(g)(1), 924(a)(2), (e)(1).  Holmes pleaded not guilty to the charges.

The district court issued a scheduling order that required the government to disclose evidence it intended to introduce under Federal Rule of Evidence 404(b). That same day, the government prepared a letter addressed to Holmes and attached discovery materials and copies of three police incident reports that documented offenses reported or witnessed by Holmes and listed Holmes's residence as 2426 Stone Street.  Holmes later filed a motion in limine to exclude the reports, which the district court denied.

At trial, Agent Russell Baer with the Drug Enforcement Agency testified as an expert in the characteristics of drug trafficking.  Agent Baer explained that drug traffickers ordinarily possess multiple types of illegal drugs, do not use the

4

substances, and use firearms to protect the drugs and profits. In the agent's opinion, the pictures of the Crown Royal bag and its contents provided a "clear indication" that crack cocaine was being sold from the Stone Street residence and the drugs were in "distribution quantities."

Johnson admitted his involvement. He testified that Holmes directed the drug operation and sales were conducted at all hours through the back door of the residence. Johnson explained that Holmes's live-in girlfriend controlled the drugs and cash when Holmes was absent. On the day that officers executed the warrant, Holmes left the residence carrying a gun, but returned moments later because he had a "bad feeling." Holmes instructed Johnson and Angel to store the guns and drugs in a closet.

Johnson acknowledged on cross-examination that he was providing testimony in expectation that he would receive a more lenient sentence. While incarcerated, Johnson told his girlfriend during a telephone conversation recorded by authorities that he was going to "fuck [Holmes] up," he should have assaulted Holmes, and he had to "beat these charges[.]" Johnson said that his comments meant that he wanted to assault Holmes physically.

Holmes moved for a judgment of acquittal on all counts, which the district court denied. The jury found Holmes guilty of all charges. The district court

sentenced Holmes to 300 months of imprisonment.

## II. STANDARD OF REVIEW

We apply three standards of review in this appeal. We review <u>de novo</u> the denial of a judgment of acquittal, and construe the evidence in the light most favorable to the government. <u>United States v. Browne</u>, 505 F.3d 1229, 1253 (11th Cir. 2007). We review decisions about the admissibility of evidence for abuse of discretion and reverse the decision only if the error affected the defendant's substantial rights. <u>United States v. Delgado</u>, 321 F.3d 1338, 1347 (11th Cir. 2003). When an issue is not preserved for appeal, our review is for plain error. <u>See</u> <u>United States v. Edouard</u>, 485 F.3d 1324, 1343 (11th Cir. 2007).

## III. DISCUSSION

Holmes makes four arguments on appeal. First, Holmes challenges the denial of his motion for a judgment of acquittal. Second, Holmes alleges that the admission of police incident reports violated Rule 404(b). Third, he attacks the introduction of his indictment because it mentioned a drug quantity. Fourth, Holmes challenges the admission of a folded dollar bill containing marijuana that police discovered on Holmes.

*A. Sufficient Evidence Supports Holmes's Convictions.*

Holmes argues there is insufficient evidence to support his convictions for

conspiracy, the distribution of powder and crack cocaine, the use of firearms in relation to drug trafficking, and his possession of firearms as a convicted felon. We affirm a challenge to the sufficiency of the evidence when "a reasonable jury could conclude that the evidence establishes guilt beyond a reasonable doubt." Browne, 505 F.3d at 1253 (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)).  That standard "does not require that the evidence be inconsistent with 'every reasonable hypothesis except guilt'" and recognizes that a jury is "'free to choose between or among the reasonable conclusions to be drawn from the evidence.'"  Id. (quoting United States v. Starrett, 55 F.3d 1525, 1541 (11th Cir. 1995)).

Sufficient evidence establishes Holmes's involvement in the criminal activity.  See 21 U.S.C. § 846.  Surveillance at 2426 Stone Street established Holmes's regular presence at the residence.  While Holmes was present, there were numerous transactions at the back door that involved the exchange of cash and a substance that appeared to be crack cocaine.  The operation was sophisticated and employed counter-surveillance techniques, including "lookouts" who communicated by two-way radio and camera security.

Johnson, who admitted involvement in the drug operation, testified that Holmes lived in the Stone Street residence, owned and directed the drug operation,

7

and that Holmes's girlfriend Angel lived at the residence. Johnson testified that Holmes instructed Johnson and Angel to conceal the weapons and drugs before execution of the search warrant. Johnson's testimony was consistent with comments Holmes made during a recorded jail conversation that he became suspicious when he saw "crackers" talking to his lookouts, directed someone in the house to "clean up," and planned to fire his lookouts when he was released from jail. Johnson's testimony was not "unbelievable on its face," and its veracity was an issue for the jury to resolve. See United States v. Garcia, 405 F.3d 1260, 1270 (11th Cir. 2005) (quoting United States v. Rivera, 775 F.2d 1559, 1561 (11th Cir. 1985)).

Physical evidence also supports Holmes's convictions for drug related offenses. When officers executed the search warrant, they discovered both powder and crack cocaine, drug paraphernalia, and evidence that the stove was used to "cook" crack cocaine. The presence of drugs and weapons supports the finding that Holmes's residence was being used to conduct drug trafficking. Based on the use of Holmes's residence and his dominion and control over the drug operation, the jury had sufficient evidence to find that Holmes was involved in a conspiracy to distribute powder and crack cocaine. See United States v. Molina, 443 F.3d 824, 828–29 (11th Cir. 2006).

8

Ample evidence also supports Holmes's convictions for possession of a firearm in furtherance of his drug crimes and as a convicted felon. <u>See</u> 18 U.S.C. §§ 2, 922(g)(1), 924(a)(2), (c), (e)(1). The police seized several firearms inside Holmes's residence. Although Holmes was not holding a weapon at the time of his arrest, his control over the Stone Street residence established his constructive possession of the firearms and his guilt for possession of a weapon as a felon. <u>See</u> <u>United States v. Glover</u>, 431 F.3d 744, 748 (11th Cir. 2005); <u>see also</u> <u>Molina</u>, 443 F.3d at 829. The number of weapons, their presence in the living room, and their proximity to the drugs and paraphernalia established that they were being used "in furtherance" of Holmes's drug operation. <u>See</u> 18 U.S.C. § 924(c)(1)(A); <u>Molina</u>, 443 F.3d at 829.

*B. The District Court Did Not Admit the Police Reports.*

Holmes argues two alleged errors about the use of three police incident reports. First, Holmes contends that the district court should have excluded the reports because they were disclosed after expiration of the discovery deadline. Second, Holmes argues that the police reports contained hearsay and should have been excluded under Federal Rules of Evidence 403 and 404(b).

The record establishes that no error occurred regarding the police reports. The government mailed Holmes a copy of the incident reports on the same day that

9

the district court entered its scheduling order, so no discovery violation occurred. In addition, the police reports were not admitted into evidence. See Edouard, 485 F.3d at 1343.

### C. The Drug Quantities Belonged in Holmes's Indictment.

Holmes argues, for the first time on appeal, that drug quantities were erroneously mentioned in the conspiracy and distribution counts of his indictment and, when read to the jury, "unfairly prejudiced" him. This argument fails. Holmes cites no authority to support his argument that the mention of drug quantities in his indictment violated his rights, so no plain error occurred.

### D. The Marijuana Discovered in Holmes's Pocket Was Admissible.

Holmes has not established that the district court abused its broad discretion by admitting the marijuana into evidence. Holmes's possession of marijuana immediately after the police observed him discard other drug evidence concealed in a cigarette package was probative of his connection to the drugs and the weapons discovered in his home and not unduly prejudicial. "[E]vidence of criminal activity other than the charged offense is not 'extrinsic' under Rule 404(b), and thus falls outside the scope of the Rule, when it is '(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3)

10

inextricably intertwined with the evidence regarding the charged offense.'"

Edouard, 485 F.3d at 1344 (quoting United States v. Baker, 432 F.3d 1189, 1205 n.9 (11th Cir. 2005)).  The marijuana evidence squarely fits into this exception because the seizure occurred when officers executed the search warrant on Holmes's residence.

## IV. CONCLUSION

Holmes's convictions are **AFFIRMED**.