[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12196
Non-Argument Calendar

_____

D.C. Docket No. 1:15-cr-20540-KMM-1

UNITED STATES OF AMERICA,

                                              Plaintiff - Appellee,

versus

SERGIO NEFTALI MEJIA-DUARTE,
a.k.a. Neftali,
 a.k.a. Compa,
 a.k.a. El Doctor,
 a.k.a. Cunado,

                                              Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 2, 2019)

Before TJOFLAT, MARTIN, and NEWSOM, Circuit Judges.

PER CURIAM:

Sergio Neftali Mejia-Duarte was convicted by a jury of a single count of conspiring to distribute five or more kilograms of cocaine in violation of 21 U.S.C. § 959, the District Court imposed a sentence, and Mejia-Duarte now appeals both his conviction and his sentence.

Mejia-Duarte was extradited to the United States from Honduras pursuant to an extradition treaty (the "Treaty") between the two countries. *See* Convention Between the United States and Honduras for the Extradition of Fugitives from Justice, Hond.-U.S., Jan. 15, 1909, 37 Stat. 1616 [hereinafter Honduras Treaty]. The Honduran extradition order allowed the United States to "impute" to Mejia-Duarte only events that occurred after February 27, 2012.[1]  As described below, the Treaty and the extradition order affect our analysis of both the conviction and the sentence.

As to the conviction, Mejia-Duarte argues that (1) the District Court admitted evidence whose probative value was substantially outweighed by the risk of unfair prejudice, *see* Fed. R. Evid. 403, and (2) the evidence presented at trial was insufficient to support his conviction for post−February 2012 conduct. As to the sentence, he challenges the District Court's (1) factual finding that he

---

[1] The precise date is not relevant.  So for the reader's ease, we omit the date and simply refer to post− and pre−February 2012 conduct.

2

obstructed justice, *see* U.S. Sentencing Guidelines Manual §3C1.1 (U.S. Sentencing Comm'n 2006),[2] and (2) legal conclusion that his sentence could be enhanced for a variety of conduct that occurred during or before February 2012. We affirm on all grounds.

## I.

The drug conspiracy with which Mejia-Duarte was charged lasted from 2004 until at least 2014.  The Government presented six witnesses, five of whom were co-conspirators and one of whom was a Colombian law-enforcement official.  Of the co-conspirators, some supplied the cocaine from Colombia, some received the cocaine in Central America, and some ensured the cocaine reached the Mexican cartels.  The co-conspirators had never met each other.  At trial, they explained how the drug-trafficking operation worked and testified that Mejia-Duarte was one of the conspirators.  The Government elicited detailed facts of the conspiracy's operation.  It did so primarily to establish that the criminal co-conspirators corroborated each other's testimony on nuance of the conspiracy that could be known only if it was true.

We analyze Mejia-Duarte's Rule 403 argument and then his sufficiency challenge.

---

[2] Though a district court does not automatically apply the version of the Guidelines in effect at sentencing, *see Peugh v. United States*, 569 U.S. 530, 539, 133 S. Ct. 2072, 2082 (2013), the parties do not contest the District Court's application of the 2016 Guidelines.

3

## A.

Mejia-Duarte objects to the admission of certain testimony by three co-conspirators. These co-conspirators testified about a drug war between Mejia-Duarte and a rival drug lord. As part of the drug war, the rival supposedly kidnapped and killed the wife or girlfriend of Mejia-Duarte's partner (which she was is unclear from the record). In response, Mejia-Duarte hired a bodyguard. The rival later turned up dead. Mejia-Duarte contends, in brief, that the admission of this evidence created a risk that the jury punished him not for the indicted conspiracy but for Mejia-Duarte murdering the rival. As such, Mejia-Duarte says, the evidence should have been excluded under Federal Rule of Evidence 403.

Rule 403 permits a district court to exclude otherwise relevant evidence when the "probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. We review a district court's evidentiary rulings for abuse of discretion. *Shealy v. City of Albany*, 89 F.3d 804, 806 (11th Cir. 1996) (per curiam). As described below, the District Court did not abuse its discretion because Mejia-Duarte makes a mountain out of a molehill as it relates to the risk of unfair prejudice. To conduct a Rule 403 analysis, we assess the evidence's probative value, then assess the risk of unfair prejudice, before balancing them against each other.

4

Start with the evidence's probative value. The heart of Mejia-Duarte's defense to the jury was that the Government presented its case through unreliable witnesses, each of whom was a criminal and each of whom had an incentive to perjure himself favorably toward the Government in hopes of receiving a sentence reduction for himself. *See* Fed. R. Crim. P. 35(b) (authorizing sentence reductions for defendants that provide the Government with "substantial assistance").

The Government responded to this defense by arguing that the witnesses must have testified truthfully because each witness's testimony was corroborated by the other witnesses' testimony. As the prosecutor argued in closing, "The reason we presented that other evidence is so you can evaluate how truthful people are being. Are they telling the truth?" He went on: "You . . . know that they were telling the truth by the little things that matched up." And just to be sure the jury got it, he went on again: "They couldn't have gotten together and decided, hey, let's create some little detail, make it interesting, that matches up." Indeed, the prosecutor's entire closing argument revolved around a physical chart that he displayed for the jury. The chart summarized corroboration among the six witnesses on ten different aspects of testimony. And two of those aspects were the bodyguard and the drug war with the rival.[3]

---

[3] The others were knowledge of (1) Mejia-Duarte's nicknames, (2) the trafficking routes, (3) the involvement of Mejia-Duarte's brother-in-law, (4) the use of helicopters for trafficking, (5) the Colombian suppliers, (6) the Mexican cartels, and (7) two other co-conspirators.

5

In summary, the Government used the evidence about the bodyguard and the drug war with the rival to show that the witnesses corroborated each other's testimony. That corroboration was crucial to convincing the jury that it could trust the criminal witnesses.

Let's discuss prejudice. For exclusion of this corroborating evidence to be proper, its "probative value" must be "substantially outweighed" by the risk of "unfair prejudice." *See* Fed. R. Evid. 403.

Mejia-Duarte cannot show that any such risk was present—something he implicitly admits and something that our review of the record confirms—let alone that it substantially outweighed the evidence's probative value. Mejia-Duarte's theory is that admission of this testimony created risk that the jury would convict him for a bad act not alleged in the indictment—namely, the rival's murder. But this theory is belied by Mejia-Duarte's own brief.[4] Even if the jury could infer from this testimony that the rival was murdered, it could not reasonably infer that Mejia-Duarte had anything to do with that murder. Only one of the three witnesses

---

[4] *See* Def.'s Br. at 34 ("[T]he summary of [the first co-conspirator's] testimony is that [the rival] kidnaps and kills [the partner's] wife and that starts a war and [the partner] calls [a third party] to send [the bodyguard] to be available for the war. Nothing here about [Mejia-Duarte] killing [the rival] in El Salvador."); *id.* at 35 ("To summarize [the second co-conspirator's] testimony, [the rival] kills [the partner's] girlfriend, a war starts, [the rival] dies or is killed in El Salvador, date unknown and [Mejia-Duarte] is at ease because the girlfriend's murderer is dead."); *id.* at 36 ("A summary of [the third co-conspirator's] testimony boils down to: rumors in Honduras about [the rival] and [Mejia-Duarte] fighting, nothing about killings in Honduras, El Salvador or elsewhere.").

6

refers to a "killing," and nothing about the evidence connects Mejia-Duarte to the death. So there was no real risk that the jury convicted Mejia-Duarte on this basis, instead of for the crime for which he was indicted and tried.

Where does all that leave us? The evidence was relevant to a necessary part of the Government's case: witness credibility. And the risk of unfair prejudice was almost non-existent. As such, the District Court did not abuse its discretion in admitting the evidence.

We turn to our second task in assessing Mejia-Duarte's conviction: whether the evidence supports it.

## B.

Mejia-Duarte was convicted of a single count of conspiring to distribute five or more kilograms of cocaine. The Government must prove "that a conspiracy existed, that the defendant knew of it, and that, with knowledge, the defendant voluntarily became a part of the conspiracy." *United States v. Alvarez*, 755 F.2d 830, 853 (11th Cir. 1985). Due to the extradition order, moreover, the Government was required to prove that Mejia-Duarte knowingly and voluntarily participated in a conspiracy *after* February 2012. The Government must prove each of these elements beyond a reasonable doubt. *United States v. Louis*, 861 F.3d 1330, 1333 (11th Cir. 2017).

We review *de novo* the sufficiency of evidence to support a criminal conviction. *United States v. Williams*, 865 F.3d 1328, 1337 (11th Cir. 2017), *cert. denied*, 138 S. Ct. 1282 (2018). We view the evidence in the "light most favorable to the jury's verdict." *Id.* To reverse, we must conclude that "no reasonable trier of fact could have found guilt beyond a reasonable doubt." *Id.* (quoting *United States v. Walker*, 490 F.3d 1282, 1296 (11th Cir. 2007)).

The evidence here supports Mejia-Duarte's conviction.

As described above, five co-conspirators testified as to the existence of a conspiracy to distribute cocaine. And at least two co-conspirators testified as to multiple quantities shipped in excess of five kilograms. The only real question is whether Mejia-Duarte knowingly and voluntarily partook in that conspiracy at some point after February 2012. We refuse to disturb the jury's finding that he did.

The Government presented sufficient evidence of Mejia-Duarte's involvement. To be sure, it presented no smoking gun. Nor did it need to. *See United States v. Vernon*, 723 F.3d 1234, 1273 (11th Cir. 2013) ("Because the crime of conspiracy is predominantly mental in composition, it is frequently necessary to resort to circumstantial evidence to prove its elements." (quoting *United States v. Toler*, 144 F.3d 1423, 1426 (11th Cir. 1998))). Multiple witnesses testified that Mejia-Duarte and his partner were in fact co-conspirators. Two witnesses described trafficking with Mejia-Duarte through the partner. *Cf. United States v.*

8

*Sosa*, 777 F.3d 1279, 1290 (11th Cir. 2015) (holding that the knowledge element is satisfied with sufficient proof that the defendant knew the "essential nature of the conspiracy" (quoting *United States v. Miranda*, 425 F.3d 953, 959 (11th Cir. 2005))). Two witnesses described being present at meetings in which Mejia-Duarte proposed or planned trafficking. *Cf. id.* (holding that the voluntariness element is satisfied with sufficient proof that the defendant acted to "further[] the purpose of the conspiracy" (quoting *Vernon*, 723 F.3d at 1274)). And all this evidence was taken from events that occurred after February 2012. Mejia-Duarte offers us no reason to view this testimony as "unbelievable on its face." *See Calderon*, 127 F.3d at 1325 (quoting *United States v. Rivera*, 775 F.2d 1559, 1561 (11th Cir. 1985)).

In short, Mejia-Duarte's presence at the meetings, combined with testimony that he was in fact a conspirator, allowed the jury to find Mejia-Duarte's knowing and voluntary participation in the conspiracy after February 2012.

We now turn to his sentence.

## II.

Mejia-Duarte offers two grounds for vacating his sentence: (1) the District Court erroneously credited unreliable testimony when it imposed an enhancement for obstruction of justice, and (2) it violated the rule of specialty when it punished him for conduct that occurred during or before February 2012.

9

A.

The District Court imposed a two-level enhancement for two episodes of obstruction, both of which Mejia-Duarte contests. Because we affirm the enhancement on the first episode, we do not reach—or even describe—the second episode.

A co-conspirator testified during trial about an interaction he had with Mejia-Duarte in prison while the latter was awaiting trial. After the co-conspirator advised Mejia-Duarte to take the Government's plea offer, Mejia-Duarte responded, "I am going to trial because I am not guilty. Anyhow, you are the only one that knows me here, that knows we are in drug trafficking." Mejia-Duarte went on: "[A]nyhow, I know your family because it was introduced to me in Honduras." The co-conspirator testified that he interpreted Mejia-Duarte's remarks, in the context of the "drug trafficking world," as a threat to "kill family members."

Mejia-Duarte contests only the District Court's factual finding, not that the facts, if true, satisfy the Guidelines criteria. We review for clear error a district court's factual findings made pursuant to sentencing. *United States v. White*, 335 F.3d 1314, 1317 (11th Cir. 2003). Mejia-Duarte claims clear error because (1) given that the record is devoid of evidence that the co-conspirator's family was ever in Honduras, Mejia-Duarte's statement was nonsensical, and (2) the co-

10

conspirator's statement was untrustworthy given that he was hoping for a sentence reduction in exchange for his testimony.

The Guidelines impose a two-level enhancement when (1) a defendant "willfully . . . attempt[s] to obstruct or impede[] the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to . . . the defendant's offense of conviction and any relevant conduct." USSG §3C1.1. A district court must find by a preponderance of the evidence that factual grounds for an enhancement exist. *United States v. Kinard*, 472 F.3d 1294, 1298 (11th Cir. 2006) (per curiam).

We cannot find clear error in the District Court's factual finding. The co-conspirator testified how he—as a drug trafficker—interpreted Mejia-Duarte's comment. Moreover, Mejia-Duarte's statement need not be entirely sensical for it to have the desired effect: instilling fear in the co-conspirator to prevent him from testifying. Having observed Mejia-Duarte's counsel cross-examine the co-conspirator during trial, the District Court was aware of the co-conspirator's possible motivations to lie. But deference to the factfinder reaches its zenith on questions of witness credibility. *See Calderon*, 127 F.3d at 1325 (stating that to disregard testimony as a matter of law, we must find the testimony "unbelievable on its face" (quoting *Rivera*, 775 F.2d at 1561)).

11

In short, the District Court did not commit clear error in finding grounds for the obstruction-of-justice enhancement by a preponderance of the evidence.

### B.

The District Court also enhanced Mejia-Duarte's sentence for conduct that was beyond the scope of the extradition order.

The parties agree that the extradition order permitted Mejia-Duarte be tried only for events that occurred after February 2012. The sole question before us is whether the Treaty precludes the United States from determining his *sentence* based on events that occurred during or before that month. The meaning of a treaty is subject to "plenary review." *United States v. Puentes*, 50 F.3d 1567, 1575 (11th Cir. 1995).

The Treaty provides that "[n]o person shall be tried for any crime or offense other than that for which he was surrendered." Honduras Treaty, *supra*, at art. IV. This provision embodies what is known as the rule of specialty, which provides that "the requesting state, which secures the surrender of a person, can prosecute that person only for the offense for which he or she was surrendered by the requested state or else must allow that person an opportunity to leave." *United States v. Isaac Marquez*, 594 F.3d 855, 858 n.1 (11th Cir. 2010) (quoting *United States v. Herbage*, 850 F.2d 1463, 1465 (11th Cir. 1988)).

12

*United States v. Garcia*, 208 F.3d 1258 (11th Cir. 2000), *cert. granted*, *judgment vacated on other grounds*, 531 U.S. 1062, 121 S. Ct. 750 (2001), forecloses Mejia-Duarte's argument that he could not be sentenced for events that occurred during or before February 2012.  The *Garcia* defendant was indicted for and extradited to the United States for conspiracy to distribute drugs, for possession of those drugs, and for use of a firearm in connection with the conspiracy and possession.  *Id.* at 1260.  In imposing the defendant's sentence, the district court accounted for conduct not charged in the indictment—namely, other drug offenses and a homicide.  *Id.*  We upheld the sentence in the face of the defendant's rule-of-specialty challenge.  *Id.* at 1261.  We explained that the rule of specialty bars "proof of other crimes in order to exact punishment for those other crimes" but not "proof of other crimes as a matter germane to the determination of punishment for the extradited crime."  *Id.*  We further explained that "the consideration of other conduct in the sentencing process is legally and conceptually a part of the punishment for the inducted crimes and within the limits set for those crimes."  *Id.*  It's that simple.

Mejia-Duarte argues that *Garcia* does not control his fate.  The sole basis for his argument is that *Garcia* fails to discuss the text of the treaty or the timeline of events.  The first point is flatly wrong, and the second point, if true, is irrelevant.  First, *Garcia* quotes the treaty, whose language is materially like the language

13

here.  *Compare id.* at 1260 ("[A] person extradited shall not be detained, tried or punished for an offense other than that for which extradition has been granted." (alterations omitted) (quoting Treaty on Extradition Between the United States and Canada, Can.-U.S., art. XII, ¶ 1, June 28, July 9, 1974, 27 U.S.T. 983)), *with* Honduras Treaty, *supra*, at art. IV ("No person shall be tried for any crime or offense other than that for which he was surrendered.")).  Second, Mejia-Duarte misses *Garcia*'s entire holding.  Because a sentence may account for conduct for which extradition was not authorized, *why* that conduct is outside the scope of the extradition order is irrelevant.

We add one important note before concluding.  Under our precedent, a vacated opinion like *Garcia* is "void" and thus has "no legal effect whatever." *United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002) (en banc) (per curiam).  Mejia-Duarte argues only that *Garcia* is not factually analogous, not that it does not bind us because the judgment was vacated.  Despite not raising the correct argument, however, Mejia-Duarte has raised the rule-of-specialty issue, and we have a "duty to find and apply the correct law." *United States v. Irey*, 612 F.3d 1160, 1215 n.33 (11th Cir. 2010) (en banc).  For the reasons described below, we adopt the rule set forth in *Garcia*.

First, despite not being precedential, *Garcia* is still persuasive. *Cf. Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1218 (11th Cir. 2009)

14

("We are free to give statements in a vacated opinion persuasive value if we think they deserve it."). *Garcia* was vacated by the Supreme Court pursuant to a writ of certiorari on a wholly separate issue. *See Garcia v. United States*, 531 U.S. 1062, 121 S. Ct. 750 (2001) (mem.) (remanding to this Court for reconsideration in light of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), which addresses when judicial factfinding ancillary to sentencing violates the Sixth Amendment). In an unpublished opinion, we summarily reaffirmed the district court's order on remand. *United States v. Garcia*, 251 F.3d 160 (11th Cir. 2001) (unpublished table decision). Because the opinion was vacated on grounds apart from legal question before us today—the rule of specialty—we see no reason not to apply *Garcia*. *See, e.g.*, *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1578 n.7 (11th Cir. 1994) (affording persuasive value to an opinion that was "vacated on unrelated grounds"); *Proffitt v. Wainwright*, 685 F.2d 1227, 1266−67 (11th Cir. 1982) (same).

Second, we find nothing but support for the *Garcia* rule from decisions of our sister circuits. *See United States v. Fontana*, 869 F.3d 464, 471 (6th Cir.), *cert. denied*, 138 S. Ct. 490 (2017) ("[I]t is clear that the district court's consideration of [the defendant's] uncharged but related conduct did not constitute 'punishment' within the meaning of the . . . treaty, but only an appropriate consideration in determining the sentence for the crimes for which [the defendant] was properly

15

extradited." (alteration omitted)); *United States v. Lomeli*, 596 F.3d 496, 502 (8th Cir. 2010) ("[T]he doctrine of specialty does not operate to bar consideration of all pre-extradition conduct when determining a defendant's punishment for the extradited offense."); *United States v. Lazarevich*, 147 F.3d 1061, 1064 (9th Cir. 1998) ("Given the long history of consideration of relevant evidence—including other criminal behavior, the Sentencing Guidelines' clear mandate of such consideration, and Supreme Court precedent, we conclude that the [t]reaty and the extradition agreement contemplated consideration of relevant offenses."); *United States v. Davis*, 954 F.2d 182, 187 n.2 (4th Cir. 1992) ("Clearly, judicial consideration, during sentencing, of a prior offense is an analytically distinct concept from punishing on the basis of that offense."); *see also United States v. Meza-Rojas*, 480 F. App'x 784, 788 (5th Cir. 2012) (collecting cases for the same proposition); *United States v. Adeyinka*, 410 F. App'x 986, 990 (7th Cir. 2011) (same).

In short, the District Court committed no legal error when it accounted for conduct beyond the scope of the extradition order in imposing Mejia-Duarte's sentence.

### III.

For these reasons, Mejia-Duarte's conviction and sentence are **AFFIRMED.**

16