[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-12111
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 22, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:09-cr-20020-RWG-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RAMON FUERTES,
a.k.a. Money,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 22, 2011)

Before TJOFLAT, CARNES and FAY, Circuit Judges.

PER CURIAM:

Ramon Fuertes appeals his convictions for sex trafficking of a minor, 18 U.S.C. §§ 1591(a)(1) and 2, and persuading, enticing, or inducing a minor to engage in prostitution, 18 U.S.C. §§ 2422(b) and 2. Fuertes raises four issues on appeal. First, he asserts that his convictions must be reversed because the testimony of the government's key witness was incredible as a matter of law. Second, Fuertes maintains that the prosecutor knowingly elicited false testimony and also made false assertions in his opening statement and closing argument.

Third, Fuertes challenges the admission of a recorded telephone call that he made while incarcerated. He maintains that the slight probative value of the recording was outweighed by the danger of unfair prejudice. He also asserts that the government acted improperly by attempting to authenticate the recording through the testimony of a Bureau of Prisons investigator who had not listened to it. He explains that the investigator's testimony prejudiced him by drawing attention to the fact that he was incarcerated. Finally, Fuertes contends that the prosecutor improperly vouched for the credibility of the government's main witness during his closing argument. For the reasons stated below, we affirm.

I.

In January 2009, Fuertes was charged with: (1) sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a)(1) and 2 (Count One); and (2) persuading,

enticing, or inducing a minor to engage in prostitution, in violation of 18 U.S.C. §§ 2422(b) and 2 (Count Two). Fuertes initially pled guilty to Count Two, but the district court later permitted him to withdraw his plea and proceed to trial.

During opening statements, the prosecutor explained that the evidence would show that Fuertes encouraged a 17-year-old girl, Chaya Sara Bar-Chaim, to prostitute herself, and then collected all of the money that she earned. The prosecutor asserted that Fuertes prostituted Bar-Chaim "[f]or 11 straight days," and that, for each of the 11 days, Bar-Chaim went out to the "track," the street where prostitutes worked, and engaged in sex acts in exchange for money. Notably, the district court instructed the jury that the parties' opening statements were not to be considered as evidence.

Bar-Chaim testified that she worked as a prostitute for Fuertes. In 2008, Bar-Chaim was working for a pimp known as Richie, but she decided to leave Richie because he was physically abusive towards her. One night, she ran into Fuertes, and asked him whether she could join his "team." Fuertes asked Bar-Chaim how old she was, and Bar-Chaim responded that she was 17. Fuertes told Bar-Chaim that she would need to obtain a fake identification card, and that it was not going to be easy for him to have her on his team, but he ultimately agreed that Bar-Chaim could join him.

3

Bar-Chaim stated that she worked as a prostitute for Fuertes for 11 days, from approximately November 30 through December 11, 2008. She estimated that she had four or five customers per day. Bar-Chaim gave all of the money that she earned to Fuertes. In exchange, Fuertes paid for a hotel room, food, and drugs. Fuertes gave her the street name, "Lollipop." Bar-Chaim explained that Samanta Grullon worked as Fuertes's "bottom," or lead prostitute, and was responsible for supervising the other prostitutes. Bar-Chaim also knew a woman named "Diamond" while she was working for Fuertes. Bar-Chaim heard Diamond tell others that she also was one of Fuertes's prostitutes, but Bar-Chaim never actually saw Diamond with a customer.

Bar-Chaim testified that Fuertes gave her a cellular telephone that she used to contact him while she was working. When the government sought to introduce certain text messages connected to that cellular telephone, the district court permitted defense counsel to *voir dire* Bar-Chaim concerning the text messages. Bar-Chaim initially stated that she was "[o]n the track," the street where the prostitutes worked, when she received the messages. However, defense counsel pointed out that there was a police report stating that Bar-Chaim had been picked up by a law enforcement officer and taken Bar-Chaim to her parents' house on the night in question. When the prosecutor resumed his direct examination, he asked

4

Bar-Chaim whether she may have been at home when she received the messages. She answered, "I'm really not sure. I'm very confused right now."

Bar-Chaim testified that she was picked up by the police twice while she was working for Fuertes. On the night of December 8, the police took her back to her parents' house. Her parents took her to a rehabilitation center the following morning, but she ran away from the center and rejoined Fuertes. Since she had left her cellular telephone at her parents' house, she called her mother and asked her mother to bring the cellular telephone to a nearby Wal-Mart. Fuertes, Grullon, "Diamond," and a fourth person accompanied Bar-Chaim to the Wal-Mart. When they arrived, they saw Bar-Chaim's mother talking to the police. The group ran back to their car, but the police caught up with them and took Bar-Chaim out of the car. Her mother brought her back to the family's home. Her parents took her to the rehabilitation center the following morning, but she ran away again and rejoined Fuertes.

On cross-examination, Bar-Chaim acknowledged that she had gaps in her memory concerning the events of this case. She initially affirmed that she worked as a prostitute for Fuertes from approximately November 30 or December 1 through December 11, 2008, but later acknowledged that she spent two nights at her parents' house during that time period.

The case agent, Special Agent Regino Chavez of the Federal Bureau of Investigation, explained that the woman whom Bar-Chaim knew as Diamond was Tamika Barker. The government presented evidence that Barker had rented the motel room where Fuertes was staying.

The government also presented testimony from Cheryl Palmer, a Bureau of Prisons employee from the Federal Detention Center in Miami. Palmer explained that the Detention Center routinely records telephone calls, and that the prisoners are made aware of that fact. The government introduced a form signed and initialed by Fuertes in which he acknowledged that his calls would be monitored.

Palmer identified Government's Exhibit 18 as a compact disc that contained a recording of a telephone call made by Fuertes at the detention center. Palmer explained that she had prepared the CD herself using the Federal Detention Center's recording system. However, Palmer did not actually listen to the CD after she created it. Therefore, the government introduced the CD through the testimony of Special Agent Chavez, who had reviewed the recording and confirmed that it was identical to the recording in the Federal Detention Center's system. Chavez explained that the recording was of a telephone conversation between Fuertes and Grullon. During the call, Fuertes admitted that he was a pimp and that Grullon worked as his lead prostitute. Fuertes explained that he had

6

become a pimp because he thought that Grullon liked that type of lifestyle, but that his own preference would have been for Grullon to work at a strip club.

Carl Ferrer testified that he operated a website, Backpage.com, where individuals could post classified advertisements. Among other things, the website hosted advertisements for adult services. Ferrer identified an advertisement for an escort named "Lollipop." The invoice for the advertisement indicated that Fuertes was the purchaser, and that the advertisement had been submitted from the e-mail address, "youngpimpin86@gmail.com." Edward Choi of Google, Inc., explained that the "youngpimpin86@gmail.com" address was registered to Fuertes.

During closing arguments, the prosecutor stated that, in addition to Bar-Chaim and Grullon, Tamika Barker also worked as a prostitute for Fuertes: "He's got another prostitute. He's got Diamond, Tamika Barker." Fuertes did not object to this statement. Much of defense counsel's closing argument focused on Bar-Chaim's credibility as a witness. In rebuttal, the prosecutor asserted that Bar-Chaim's testimony was consistent with the testimony of other witnesses:

> Now, if Sara was lying to you, then Special Agent Chavez was lying to you, also. And Detective Benavides from the Miami-Dade Police Department was lying to you, also. The photographs of the hotel room, 109, where they were all found together, also lies. Mike Dikovitsky from MetroPCS, liar. His records, lies. Right, lies. That means that Ed Choi from Google, he must be a liar, too. That Carl Ferrer from Backpage, he must be a liar, too. If Sara was lying,

7

they're all lying.  Do you know why?  Because they're all saying the same thing.  Sara's not up there alone.

Fuertes did not object to these remarks.  The jury returned a verdict of guilty with respect to both counts in the indictment.

## II.

We review challenges to sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the government, and drawing all reasonable inferences and credibility choices in the government's favor.  *United States v. Calderon*, 127 F.3d 1314, 1324 (11th Cir. 1997).  "It is well established that credibility determinations are the exclusive province of the jury."  *Id.* at 1325 (quotation omitted).  We will not disturb a verdict that hinged on a credibility choice unless the defendant can meet the high standard of showing that the witness's testimony was incredible as a matter of law.  *Id.*  "For testimony of a government witness to be incredible as a matter of law, it must be 'unbelievable on its face.'"  *Id.* (quoting *United States v. Rivera*, 775 F.2d 1559, 1561 (11th Cir. 1985)).  Testimony is unbelievable on its face if it describes events that the witness could not have observed, or events that could not possibly have occurred under the laws of nature.  *Id.*

In this case, Bar-Chaim's testimony was not incredible as a matter of law.

The key factual issue at trial was whether Fuertes recruited or enticed Bar-Chaim to engage in prostitution, knowing that she was under the age of 18. *See* 18 U.S.C. §§ 1591(a), 2422(b). Bar-Chaim testified that: (1) she worked as a prostitute for Fuertes in exchange for shelter, food, and drugs, and (2) she informed Fuertes before she started working for him that she was only 17 years old. That testimony did not describe events that Bar-Chaim could not have observed, or events that could not possibly have occurred under the laws of nature.

Fuertes focuses on two aspects of Bar-Chaim's testimony—her assertion that she worked as a prostitute for Fuertes for 11 straight days, and her statement that she received text messages while working "on the track" as a prostitute. Even if those parts of Bar-Chaim's testimony could not have occurred, the remainder of her testimony was not incredible as a matter of law. A reasonable jury could have rejected those parts of Bar-Chaim's testimony, but still accepted her assertions that Fuertes enticed her to work as a prostitute knowing that she was only 17 years old.

Finally, although Fuertes emphasizes Bar-Chaim's history of drug use, difficulty in remembering certain events, and reliance on documents and other external evidence to fill gaps in her memory, none of those problems show that the key parts of her testimony could not possibly have occurred. *See Calderon*, 127 F.3d at 1325. Accordingly, Fuertes has failed to establish that Bar-Chaim's

9

testimony is incredible as a matter of law.

## III.

Because Fuertes did not raise a claim of prosecutorial misconduct at trial, we are reviewing only for plain error. *United States v. Frank*, 599 F.3d 1221, 1238 (11th Cir.), *cert. denied*, 131 S.Ct. 186 (2010). Under the plain error standard, the defendant must show: (1) an error, (2) that is plain or obvious, and (3) that affects his substantial rights. *Id.* An error affects a defendant's substantial rights if there is a reasonable probability that, but for the error, the outcome of the trial would have been different. *Id.* at 1237-38. If the defendant is able to satisfy the first three steps of the plain error standard, we may exercise our discretion to correct an error that "seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 735-36, 113 S.Ct. 1770, 1778-79, 123 L.Ed.2d 508 (1993) (quotation and alteration omitted).

We will reverse a defendant's conviction based on remarks made by the prosecutor only if: (1) the remarks at issue were improper; and (2) the remarks prejudiced the defendant's substantial rights. *Frank*, 599 F.3d at 1237. During closing argument, the parties may not go beyond the scope of the evidence introduced at trial, but they may suggest that the jury draw certain inferences from the trial evidence. *See United States v. Braithwaite*, 709 F.2d 1450, 1456 (11th

10

Cir. 1983) ("Although it may be error to allow counsel to argue to the jury facts that are not in evidence, 'an attorney is entitled to urge the conclusions which the attorney thinks the jury should draw from the evidence.'" (quoting *United States v. Allen*, 588 F.2d 1100, 1108 (5th Cir. 1979)). "[T]he district court may rectify improper prosecutorial statements by instructing the jury that only the evidence in the case is to be considered." *United States v. Jacoby*, 955 F.2d 1527, 1541 (11th Cir. 1992).

To establish prosecutorial misconduct based on the use of false testimony, "a defendant must show the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." *United States v. McNair*, 605 F.3d 1152, 1208 (11th Cir. 2010), *petition for cert. filed*, (U.S. Oct. 18, 2010) (No. 10-528). "Perjury is defined as testimony given with the willful intent to provide false testimony and not as a result of a mistake, confusion, or faulty memory." *Id.* (quotation omitted). False testimony is material only if it could have affected the jury's verdict. *Id.* "[A] prior statement that is merely inconsistent with a government witness's testimony is insufficient to establish prosecutorial misconduct." *Id.*

Here, Fuertes has not shown plain error with respect to the government's opening statement. The prosecutor's remark that Fuertes prostituted Bar-Chaim

for 11 straight days was consistent with what the prosecutor believed would be the evidence presented at trial. Indeed, Bar-Chaim initially stated that she worked for Fuertes for 11 days and engaged in commercial sex 4 to 5 times per day. Even if Fuertes later impeached those parts of Bar-Chaim's testimony, the prosecutor's opening statement was not improper.

Similarly, Fuertes has not shown that the prosecutor engaged in misconduct with respect to Bar-Chaim's testimony. Bar-Chaim's conflicting statements about working for 11 straight days and about receiving text messages while "on the track" reflected her confusion about the sequence of events and her lack of memory, rather than a knowing attempt to mislead the jury. A prosecutor does not engage in misconduct merely by eliciting testimony that turns out to be inaccurate due to the witness's confusion or lack of memory. *See McNair*, 605 F.3d at 1208.

Fuertes also has not shown that the prosecutor acted improperly by asserting during closing arguments that Tamika Barker worked as a prostitute for Fuertes. Bar-Chaim testified that she heard Barker tell others that she was a prostitute for Fuertes, although she herself had never witnessed Barker solicit any clients. A jury could reasonably infer from this evidence that Barker worked as a prostitute for Fuertes. Even if Barker denied working for Fuertes, the government was not required to take her denial at face value. Accordingly, Fuertes has failed

12

to establish plain error with respect to any of his claims of prosecutorial misconduct.

IV.

Generally, we review a district court's evidentiary rulings for an abuse of discretion. *United States v. Edouard*, 485 F.3d 1324, 1343 (11th Cir. 2007). Where a defendant failed to object to the admission of evidence at trial, however, we review only for plain error. *Id.* In this case, Fuertes did not object to the admission of the recorded telephone call at trial. Although he did challenge the government's pretrial motion to admit the recording, a pretrial objection is insufficient to preserve an evidentiary ruling for appellate review. *Cf. United States v. Rutkowski,* 814 F.2d 594, 598 (11th Cir. 1987) ("Although defense counsel objected before trial to the admission of the evidence, the record reveals no objection during the trial. The overruling of a motion *in limine* is not reversible error, only a proper objection at trial can preserve error for appellate review." (quotation omitted)). Fuertes also did not object to Palmer's testimony. Therefore, we are reviewing this issue only for plain error.

The presumption of innocence is a key component of a criminal defendant's right to a fair trial. *Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 1692, 48

L.Ed.2d 126 (1976). The Supreme Court has explained that constant references at trial to a defendant's incarceration violate due process because they tend to weaken the presumption of innocence and suggest to the jury that the defendant is guilty. *See id.* at 504-06, 96 S.Ct. at 1693-94 (holding that a state cannot compel a criminal defendant to stand trial while dressed in identifiable prison clothes). Nevertheless, brief references to a defendant's incarceration do not violate due process if the remarks, when viewed in context, likely had no impact on the jury's decision. *See United States v. Villabona-Garnica*, 63 F.3d 1051, 1058 (11th Cir. 1995) (concluding that witness's brief reference to the defendant's incarceration did not rise to the level of a due process violation because it was unlikely that the stray remark prejudiced the jury against the defendant).

Federal Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," but can be admitted for other purposes. Fed.R.Evid. 404(b). Rule 404(b) only applies to evidence that is extrinsic to the charged offenses. *Edouard*, 485 F.3d at 1344. Evidence is not extrinsic, and therefore falls outside the scope of Rule 404(b), if it is: "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably

14

intertwined with the evidence regarding the charged offense." *Id.* at 1344 (quotation omitted).

All evidence of a defendant's prior criminal activity, regardless of whether that evidence falls inside or outside the scope of Rule 404(b), must satisfy the requirements of Fed.R.Evid. 403 ("Rule 403"). *Id.* Rule 403 provides that otherwise relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. "Rule 403 is an extraordinary remedy, which should be used only sparingly, and the balance should be struck in favor of admissibility." *Edouard*, 485 F.3d at 1344 n.8 (quotations and alterations omitted). The reviewing court must "look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Id.* (quotation omitted).

Here, the district court committed no error, plain or otherwise, by admitting Palmer's testimony. In order to authenticate the recording, the government needed to show: (1) the accuracy of the recording equipment, (2) the competency of the operator, (3) the absence of material deletions, additions, or alterations, and (4) the identification of the relevant speakers. *See United States v. Sarro*, 742 F.2d 1286,

15

1292 (11th Cir. 1984) (describing the requirements for authenticating a recording). Palmer's testimony was relevant to the first two elements. Palmer explained that she copied the recording from an original contained in the Federal Detention Center's recording system, that she was trained in the use of the equipment, and that the equipment was working properly on the day that she made the copy.

Palmer's testimony did not result in unfair prejudice to Fuertes. Because Fuertes made the recorded call while at the Federal Detention Center, Palmer's testimony necessarily referred to the fact that Fuertes was incarcerated. However, it is unlikely that Palmer's brief testimony prejudiced the jury against Fuertes. Notably, Fuertes neither objected to Palmer's testimony nor requested a curative instruction from the district court, which tends to suggest that he did not view Palmer's testimony as particularly damaging.

The district court also did not plainly err by admitting the recording itself. During the recorded call, Fuertes acknowledged that he was a pimp, that he had a number of prostitutes that he supervised, and that Grullon was his lead prostitute. Those admissions corroborated Bar-Chaim's testimony that Fuertes was a pimp and that Grullon was his lead prostitute. Because Fuertes's statements were directly relevant to the charges against him, they were not extrinsic, and, therefore, the recording was not subject to Rule 404(b). *See Edouard*, 485 F.3d at 1344.

16

Although Fuertes suggests that some jurors may have been offended by his "non-traditional" relationship with Grullon, we conclude that any prejudice did not significantly outweigh the probative value of this evidence. Accordingly, we find no plain error in the admission of the recording or in the manner in which it was admitted.

V.

Because Fuertes did not object to the government's closing argument at trial, we are reviewing his vouching claim only for plain error. *See United States v. Newton*, 44 F.3d 913, 920-21 (11th Cir. 1995). "Ordinarily, it is improper for a prosecutor to bolster a witness's testimony by vouching for that witness's credibility." *United States v. Bernal-Benitez*, 594 F.3d 1303, 1313 (11th Cir.), *cert. denied*, 130 S.Ct. 2121, and *cert. denied*, 130 S.Ct. 2123, and *cert. denied*, 131 S.Ct. 314 (2010). A prosecutor's comments amount to improper vouching if the jury could reasonably believe that the prosecutor was expressing a personal belief in the witness's credibility. *Id.* "A prosecutor's comments can fail this test in two ways: (1) by placing the prestige of the government behind the witness, or (2) by indicating that information not before the jury supports the witness's credibility." *Id.* at 1313-14. "The rule against bolstering does not, however, prevent the prosecutor from commenting on a witness's credibility, which can be

17

central to the government's case." *Id.* at 1314.

Here, the prosecutor's statement during his closing argument did not amount to improper vouching. In response to defense counsel's attack on Bar-Chaim's credibility, the prosecutor observed that, if the jury were to conclude that Bar-Chaim had not been truthful, it would have to conclude that other witnesses who corroborated parts of her story were lying as well. This was a permissible response to Fuertes's attack on Bar-Chaim's credibility. The prosecutor did not suggest that there was evidence not before the jury that supported Bar-Chaim's story, nor did the prosecutor place the prestige of the government behind Bar-Chaim's testimony by arguing, for example, that the government would not place an untruthful person on the witness stand. Thus, the prosecutor's remark did not amount to improper vouching. *See Bernal-Benitez*, 594 F.3d at 1313-14.

Based upon a review of the record and consideration of the parties' briefs, we affirm Fuertes's convictions.

**AFFIRMED.**