[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10308
_____

D. C. Docket No. 0:12-cr-60116-DTKH-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VAN LAWSON WILLIAMS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 5, 2014)

Before MARCUS, Circuit Judge, and PROCTOR[*] and EVANS,[**] District Judges.

EVANS, District Judge:

---

[*] Honorable R. David Proctor, United States District Judge for the Northern District of Alabama, sitting by designation.

[**] Honorable Orinda Evans, United States District Judge for the Northern District of Georgia, sitting by designation.

Van Lawson Williams ("Williams") appeals his convictions and sentence on multiple counts of sex trafficking of a minor and one count of attempted sex trafficking of a minor.  Williams raises numerous issues on appeal challenging legal rulings, evidentiary rulings, and the sentence imposed.  After oral argument and a careful review of the briefs and record in this case, we affirm.

## BACKGROUND

Williams was charged in a second superseding indictment with four counts of sex trafficking of a minor in violation of 18 U.S.C. § 1591(a)(1) and (b)(2) (counts 1, 2, 4, 5) and two counts of attempted sex trafficking of a minor in violation of 18 U.S.C. § 1594(a) (counts 3, 6).  On October 30, 2012, Williams was convicted by a jury on counts 1 through 5 and found not guilty on count 6.  He was sentenced on January 8, 2013 to a term of life imprisonment.   Williams timely filed a notice of appeal.

We view the trial evidence in the light most favorable to the verdict.  See United States v. Isnadin, 742 F.3d 1278, 1303 (11th Cir. 2014).   The evidence showed that Williams, over the course of approximately nine months spanning 2011 and 2012,  established relationships with five minor girls between the ages of 12 and 16 by inviting them into his home under the pretense of providing shelter, offering the girls marijuana and crack cocaine, engaging in sexual intercourse with

2

at least two of the girls, and making several of the girls believe that their relationships with him were romantic and meaningful.  The girls were either runaways or in the foster care system when they met Williams.

After a short period of time, Williams instructed the girls that they would need to engage in acts of prostitution in order to make a contribution to the home's income.  The girls, some of whom had engaged in prostitution prior to meeting Williams, would procure clients using Williams' cell phone.  Williams would supply the customers with condoms and charge an established fee for the use of a room in his home.  The girls would give the proceeds directly to Williams.

One of the girls testified that she was employed by another pimp, DeAngelo Jones, at the time she met Williams.  Williams offered her housing, food, and the promise of substantial income if she would begin prostituting for him.   During their first encounter, the girl resisted Williams' forcible attempts to have sex with her while she was intoxicated as a result of the crack cocaine he had provided. After a brief struggle, Williams abandoned his efforts and left her alone.  Shortly after that first encounter, the girl and her pimp began to operate out of Williams' home.  Although Jones, not Williams, was the girl's pimp, Williams charged Jones rent for the room and was aware of the ongoing prostitution dates in his home.

3

Williams was arrested on May 16, 2012.  After pleading not guilty to the counts contained in the original indictment[1], Williams filed a motion to dismiss, which was denied by the district court on August 7, 2012.  On appeal, Williams argues that 18  U.S.C. § 1591(a), under which he was charged in counts 1, 2, 4, and 5, is unconstitutional.

Williams also appeals several rulings made during trial.  Specifically, Williams challenges: the district court's denial of his motion for a mistrial when a government witness made a comment about Williams' prior incarceration; the district court's ruling that permitted witnesses to discuss uncharged instances of drug use, drug dealing, and statutory rape on the part of Williams; and the district court's ruling that precluded Williams from cross-examining two of the minor girls regarding acts of prostitution that occurred in the weeks and months following Williams' arrest.

Finally, Williams appeals the sentence imposed by the district court on the grounds that it is substantively unreasonable under 18 U.S.C. § 3553(a).

---

[1] The original indictment, filed on May 29, 2012, charged two counts of sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a)(1) and (b)(2), and two counts of attempted sex trafficking of a minor, in violation of 18 U.S.C. § 1594(a).  On August 8, 2012, a superseding indictment was filed, changing one of the attempt counts to a substantive 18 U.S.C. § 1591(a)(1) and (b)(2) charge, and adding an additional sex trafficking of a minor count and an additional attempted sex trafficking of a minor count, both with victims not identified in the original indictment.  The second superseding indictment--the operative indictment in this case--was filed on September 26, 2012.  It contained minor grammatical changes and narrowed the date ranges from the superseding indictment.

4

## DISCUSSION

I.    Motion to Dismiss Indictment

Williams argues that he was charged with misconduct pursuant to an unconstitutional statute and, as a result, his motion to dismiss the indictment should have been granted.  The statute at issue is 18 U.S.C. § 1591(a), which, as amended in 2008, makes it a federal crime for anyone

> (1)    in or affecting interstate or foreign commerce . . . [to] recruit[], entice[], harbor[], transport[], provide[], obtain[], or maintain[] by any means a person; . . .
>
> knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act . . . .[2]

Williams argues that § 1591 violates his Fifth Amendment due process rights in three ways.  First, by newly empowering the government to establish a § 1591(a) violation upon a showing of reckless disregard, the 2008 amendment

---

[2] Williams initially raised a separate constitutional argument concerning a perceived tension between 18 U.S.C. § 1591(a)(1) and 18 U.S.C. § 1591(c).  Section 1591(c) provides that, "[i]n a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe [the victim], the Government need not prove that the defendant knew that the person had not attained the age of 18 years."  Other courts have interpreted in different ways the relationship between 18 U.S.C. § 1591(a)(1) and 18 U.S.C. § 1591(c).  Compare United States v. Robinson, 702 F.3d 22, 32 (2d Cir. 2012), with United States v. Wilson, No. 10-60102-CR, 2010 WL 2991561, at *6 (S.D. Fla. July 27, 2010), report and recommendation adopted by 2010 WL 3239211 (S.D. Fla. Aug. 16, 2010).  We have never had occasion to examine the interplay between these two provisions, and we need not do so today.  At oral argument, Williams' counsel abandoned all arguments implicating 18 U.S.C. § 1591(c).  Moreover, the operative indictment in this case did not charge Williams under 18 U.S.C. § 1591(c), and the jury received no instructions regarding that provision.  Quite simply, § 1591(c) is not at issue here.

5

impermissibly diluted the statute's scienter requirement.  Second, the statute unconstitutionally shifts the government's burden of establishing mens rea to the defendant.  Third, the statute is unconstitutionally vague in that it fails to give fair warning of what is outlawed.   Finally, Williams challenges the statute on Sixth Amendment grounds, stating that the alleged "burden-lessening provisions" violate his right to demand that a jury find him guilty beyond a reasonable doubt of all elements of the charged crime.  Williams' arguments are all without merit.

First, nothing in the Fifth Amendment requires the government to prove that Williams actually knew the girls were underage.  In fact, Congress likely could have eliminated the relevant mens rea altogether without triggering constitutional concerns.  See United States v. X-Citement Video, Inc., 513 U.S. 64, 72 n.2 (1994); Morissette v. United States, 342 U.S. 246, 251 n.8 (1952).  Second, there is simply nothing in the language of § 1591 to suggest that the statute shifts the burden to the defendant or lessens the government's burden to prove all elements of the crime beyond a reasonable doubt.   Notably, Williams does not even attempt to specify any part of the statute that makes it vulnerable to Fifth or Sixth Amendment infirmities.  This is so because no such vulnerability exists.  In fact, § 1591 neither mentions nor alludes to a burden of proof, see 18 U.S.C. § 1591(a), and the only inference to be drawn therefrom is that the government bears its

6

unassailable constitutional burden of proving, beyond a reasonable doubt, all elements of the crime.

As for Williams' conclusory assertion that § 1591 "is unconstitutionally vague in that it fails to give a fair warning of what is outlawed," we do not agree. The plain language of § 1591(a) makes it a crime to knowingly recruit, entice, harbor, transport, provide, obtain, or maintain an individual under the age of eighteen to engage in commercial sex acts, where the defendant either knows the individual is under the age of eighteen, or acts in reckless disregard of whether the individual is under the age of eighteen.

We affirm the district court's denial of Defendant's Motion to Dismiss Indictment.

## II.    Motion for Mistrial

Defendant argues that the district court should have granted a mistrial after a government witness mentioned that he had been incarcerated prior to the events giving rise to the instant charges and conviction.

During the first day of testimony, the government asked its second witness, a 16 year-old victim of Williams, what Williams said to her during their initial encounter. She responded that Williams said, "Hello, momma, how you doing, stuff like that, then he pulled out an envelope full of money, and he told me his

7

mom just passed away, he just got out of prison, so I went to his house and smoked weed." Williams' counsel moved for a mistrial based on the witness' statement that Williams had spent time in jail; in doing so, counsel acknowledged that the witness had "blurted [the statement] out" and "the prosecutors [had not] necessarily solicited [it]" [Doc. 164 at 474-75].

After hearing from both sides, the district court observed that there had been no motion in limine to preclude any reference to a prior incarceration [Id. at 475]. The court further observed that the comment was unsolicited and that the government had "moved on" from the witness' reference to Williams' incarceration as soon as it arose [Id. at 476]. Finally, the court remarked that "[a] mistrial should be granted only when the substantial rights of the Defendant have been violated or somehow the trial process has been compromised. I would indicate that has not happened" [Id.]. After denying the motion, the district court judge offered to provide a curative instruction, to which Williams' counsel responded, "I am not asking for a curative instruction"[3] [Id. at 477].

A district court's denial of a motion for a mistrial is reviewed for abuse of discretion, and we will reverse the district court "when there is a reasonable

---

[3] Later in the trial, Williams took the stand and discussed some of his previous convictions. At that time, the district court informed the jury: "[t]his testimony about a prior conviction is admissible only on the question of the credibility of the witness, that is, whether the witness is believable. It cannot be considered for any other purpose at all" [Doc. 166 at 949].

8

probability that, but for the remarks, the outcome of the trial would have been different." United States v. Newsome, 475 F.3d 1221, 1227 (11th Cir. 2007).

The United States Supreme Court has held that frequent references at trial to a defendant's prior incarceration may violate due process because they tend to weaken the presumption of innocence. United States v. Fuertes, 435 F. App'x 802, 809 (11th Cir. 2011) (citing Estelle v. Williams, 425 U.S. 501, 504-06 (1976)). However, a distinction has been drawn between frequent references and stray remarks that likely have no impact on a jury's decision. See United States v. Villabona-Garnica, 63 F.3d 1051, 1058 (11th Cir. 1995). Indeed, we have held that "[t]he mere utterance of the word jail, prison, or arrest does not, without regard to context or circumstances, constitute reversible error per se." United States v. Emmanuel, 565 F.3d 1324, 1334 (11th Cir. 2009). In other words, "where the comment is brief, unelicited, and unresponsive, adding nothing to the government's case, the denial of a mistrial is proper." Id.; see also United States v. Veteto, 701 F.2d 136, 139 (11th Cir. 1983) (affirming the district court's denial of a motion for mistrial where a government witness testified that the defendant had mentioned his prior incarceration).

Here, while the witness' statement regarding William's prior incarceration was better left unsaid, the district court did not abuse its discretion in denying

9

Williams' motion for a mistrial.  The witness' utterance easily meets the criteria outlined in our prior holdings:  it was unsolicited, brief, and added virtually nothing to the government's case.  Moreover, the prosecution did not linger on the comment but instead immediately forged ahead with questioning unrelated to the problematic statement.  Finally, the record indicates that the district court carefully considered Williams' motion and applied the correct legal standard in denying it.  Despite Williams declining a curative instruction, the court later informed the jury that testimony regarding prior incarceration was "admissible only on the question of the credibility of the witness," thereby insulating Williams from any prejudice that might have otherwise lingered.  See United States v. Stone, 9 F.3d 934, 938 (11th Cir. 1993) ("Few tenets are more fundamental to our jury trial system than the presumption that juries obey the court's instructions.").

In sum, there is no basis upon which to find a reasonable probability that, but for the witness' solitary remark, the outcome of Williams' trial would have been any different.  Thus, we affirm the district court's denial of Williams' motion for a mistrial.

III.    Testimony regarding uncharged instances of drug use, drug dealing, and sexual activity

Next, Williams asserts that the district court committed reversible error by permitting evidence of uncharged misconduct, including testimony regarding

10

Williams' drug use, drug dealing to third parties, and sexual activity with the minor girls.   The district court permitted the testimony because it found it to be inextricably intertwined with the charged criminal activity.  Williams submits that the court should have excluded the evidence under Federal Rules of Evidence 404(b)[4] and 403[5].  Evidentiary rulings are reviewed for abuse of discretion. United States v. Brown, 415 F.3d 1257, 1264-65 (11th Cir. 2005).   Rule 404(b) excludes evidence that is extrinsic to the charged offense and offered only to show that a person acted in conformity with his character on a particular occasion.   See Fed. R. Evid. 404(b).  Evidence is not extrinsic, and therefore falls out of the scope of Rule 404(b), if it is: "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence

---

[4] Rule 404(b) provides:

(b)      Crimes, Wrongs, or Other Acts.

       (1)      Prohibited Uses. Evidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformance with the character.

       (2)      Permitted Uses; . . . This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident . . . .

Fed. R. Evid. 404(b)(1) and (2).

[5] Pursuant to Rule 403, however, even if character evidence is relevant for one of the purposes indicated in Rule 404(b), it nevertheless may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

11

regarding the charged offense." United States v. Edouard, 485 F.3d 1324, 1344 (11th Cir. 2007) (internal quotation marks and citations omitted). "Nonetheless, evidence of criminal activity other than the charged offense, whether inside or outside the scope of Rule 404(b), must still satisfy the requirements of Rule 403." Id. Rule 403 provides that otherwise relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Here, the testimony proffered at trial that Williams provided his minor victims with drugs and engaged in sexual intercourse with at least two of them is inextricably linked with the charged misconduct of sex trafficking of a minor and/or attempted sex trafficking of a minor.[6] The witnesses gave consistent testimony that Williams enticed them into his home with promises of food and shelter, offered narcotics to them, and then invited them to engage in sexual activity under the pretext of a romantic relationship before recruiting them into his prostitution business. Williams' pattern of conduct is, without question, inextricably intertwined with the charged offense which includes an essential

---

[6] The use of intrinsic bad acts evidence in cases involving sex trafficking is not unprecedented. See United States v. Campbell, 49 F.3d 1079, 1083-84 (5th Cir. 1995) (affirming district court's ruling that the probative value of evidence regarding how a defendant "used drugs and violence to control the women and make them prostitute for him" outweighed its prejudicial effect).

12

element that can be proven with evidence that Williams enticed the minors to participate in acts of prostitution.  See 18 U.S.C. § 1591(a)(1).[7]  Moreover, under the Rule 403 balancing test, the probative value of the evidence far outweighs the prejudicial effect.

The other admitted evidence that Williams objects to is the testimony that Williams sold drugs to persons other than his minor victims.  Williams identifies only a single instance of purportedly impermissible testimony regarding third party drug sales, namely a witness' answer of "yes" when she was asked whether Williams sold marijuana to individuals outside of his home. [Appellant Brief at 41 (citing Trial Transcript, Doc. 164 at 281)].  Accordingly, we assume that this is the only reference to third party drug sales that Williams challenges on appeal.[8]  While it is not obvious to the Court that the drug sales were not inextricably intertwined with the charged offense, there is no need to belabor the issue because it is so clear that any possible error in admitting the testimony was harmless error and thus not grounds for reversal.  See United States v. Hands, 184 F.3d 1322, 1329 (11th Cir. 1999) ("An erroneous evidentiary ruling will result in reversal only if the resulting

---

[7] Even if the evidence was not inextricably intertwined with the crime, thereby placing it within the scope of Rule 404(b), it could arguably come in under Rule 404(b)(2) as evidence proving plan or preparation.

[8] While it is undisputed that Williams had a standing objection to testimony of third party drug sales, it is incumbent on Williams to identify on appeal the specific testimony that he is challenging.  The Court will not scour the record and speculate as to objectionable testimony.

13

error was not harmless."), corrected by 194 F.3d 1186 (11th Cir. 1999).   Simply put, the revelation that Williams' marijuana sales were not confined to his minor victims is highly unlikely to have had any "substantial and injurious" influence on the jury's verdict where the government presented considerable evidence that Williams provided the minors with marijuana and crack cocaine before having or attempting to have sex with them and then asking them to engage in acts of prostitution.  See United States v. Guzman, 167 F.3d 1350, 1353 (11th Cir. 1999) (explaining that reversal is warranted "only if [the error] resulted 'in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict'" (citations omitted)).

Accordingly, we affirm the district court's finding that evidence of uncharged drug use and sexual activity with the girls was inextricably intertwined with the charged offense.  Furthermore, we hold that the limited testimony pertaining to third party drug sales--even if *not* inextricably intertwined--did not have a substantial influence on the jury's verdict and thus does not warrant reversal.

IV.    Excluded testimony regarding victims' post-offense acts of prostitution

Williams asserts that the district court violated his Sixth Amendment Confrontation Clause rights by not allowing cross-examination of the minor

14

victims regarding acts of prostitution that occurred after Williams was arrested.

Specifically, Williams posits that the limited scope of cross-examination "hindered

his ability to discern [the minor victims'] backgrounds, credibility, and

interrelationships" and therefore "prevented the inclusion of crucial evidence

necessary to establishing his defense." [Appellant's Brief at 47].   Williams does

not identify, however, what evidence would have come to the surface if his

questioning had been unconstrained.

Prior to witness testimony, the district court heard argument from both sides

regarding the applicability of Federal Rule of Evidence 412[9], otherwise known as

the Rape Shield Law, in this case. [Trial Transcript, Doc. 163 at 219-255].

Ultimately, Williams and the government agreed that a waiver, signed by the

witnesses, would be sufficient to satisfy Rule 412 and permit testimony on matters

---

[9] Rule 412 provides in relevant part:

(a)    Prohibited Uses. The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct:

    (1)    evidence offered to prove that a victim engaged in other sexual behavior; or

    (2)    evidence offered to prove a victim's sexual predisposition.

(b)    Exceptions.

    (1)    Criminal cases.  The court may admit the following evidence in a criminal case:

    . . . .

        (B)    evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor; and

        (C)    evidence whose exclusion would violate the defendant's constitutional rights.

15

directly pertaining to the charged offense, including the witnesses' sexual relations with Williams.

Thereafter, the parties zeroed in on the more "thorny and difficult issue" of whether the district court should permit testimony regarding pre-offense and post-offense sexual activity (including acts of prostitution) on the part of the minor girls. The government argued that the resolution of the issue should be guided not only by Rule 412, but also by considerations of relevance and prejudice under Rules 401 and 403. [Id. at 243-50]. The government conceded that pre-offense sexual activity might be relevant depending on the line of questioning, but moved to preclude any testimony about sexual conduct occurring after Williams' arrest.

Williams responded to the motion by arguing that the post-offense conduct was relevant because two of the girls admitted that they worked for another pimp, DeAngelo Jones, around the same time they worked for Williams, and Williams wanted to assert that Jones was responsible for the entire enterprise. The district court then observed:

> If the Government is saying the man who is enticing, harboring, and maintaining these young ladies is Mr. Williams, and [the defense] want[s] to say that is not true, the man who is doing that is Mr. Jones . . . if that was [happening] at the same time, I don't think there is any question that would be admissible [testimony] because that would [potentially exonerate] Mr. Williams. . . . But if it turns out that having left Mr. Williams' home, these young ladies [later engaged] in prostitution at the behest of Mr. Jones, I don't think that is relevant.

16

[Id. at 270].   The district court ruled "conditionally" that post-offense sexual activity was not relevant unless Williams could proffer actual testimony and show its relevance. [Id.].[10]

In reliance on this ruling, the government objected to three separate attempts by Williams to elicit testimony pertaining to the girls' post-offense acts of prostitution under the employ of Jones.  One objection was overruled; the other two were sustained.  The court sustained the first objection only after Williams was given an opportunity to establish the time frame relevant to his question. [Trial Transcript, Doc. 165 at 725-27].

The second sustained objection resulted in a sidebar where defense counsel contended that the questions regarding the witness' relationship with Jones could be relevant to her credibility or a prior witness' credibility, especially if the testimony uncovered inconsistencies in the girls' stories [Id. at 762-63].  The district court, after noting that Williams had ample opportunity to impeach the witnesses, sustained the government's objection. [Id. at 767-68].

The district court's discretion in limiting the scope of cross-examination is subject to the requirements of the Confrontation Clause of the Sixth Amendment.[11]

---

[10] The district court specified that if the questioning was directed at the credibility of the witnesses, it would be allowed [id. at 251], but emphasized that "what [the girls] did with Mr. Jones has no bearing on what they did or didn't do with Mr. Williams." [Id.].

17

United States v. Taylor, 17 F.3d 333, 340 (11th Cir. 1994).  "'The test for the Confrontation Clause is whether a reasonable jury would have received a significantly different impression of the witness' credibility had counsel pursued the proposed line of cross-examination.'"  Id. (quoting United States v. Garcia, 13 F.3d 1464, 1469 (11th Cir. 1994)).  In other words, "the Sixth Amendment guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  United States v. Beale, 921 F.2d 1412, 1424 (11th Cir. 1991) (internal quotation marks and citations omitted);  see also Michigan v. Lucas, 500 U.S. 145, 149 (1991) ("The right [to confront a witness] may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." (internal quotation marks and citations omitted)).  Finally, we have held that "[c]ross examination of a government 'star' witness is important, and a presumption favors free cross-examination on possible bias, motive, ability to perceive and remember, and general character for truthfulness."  United States v. Phelps, 733 F.2d 1464, 1472 (11th Cir. 1984) (internal citation omitted).  Nevertheless, "cross-examination must be relevant."  Id.

---

[11] The Confrontation Clause of the Sixth Amendment provides:  "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const., Sixth Amendment.

18

Here, the district court did not abuse its discretion in limiting Williams' cross-examination to acts of prostitution that occurred before and during the time Williams was in contact with the girls.  There is no reason to believe--and Williams does not assert--that either of the two witnesses he was constrained in questioning were "star" witnesses for the government.  In addition, Williams had ample opportunity to impeach the credibility of the witnesses, both through questioning regarding false statements made to law enforcement and through questioning regarding intentional misrepresentation of a witness' age in her encounters with Williams.  We agree with the court below that the girls' involvement in prostitution after Williams' arrest bears no relevance to the criminal activity perpetrated by Williams.

Finally, and critically, Williams does not offer an explanation of what "crucial evidence" was omitted as a result of the excluded testimony.  Without that explanation, this Court cannot evaluate whether a reasonable jury would have received a significantly different impression of the witness' credibility had Williams pursued a proposed line of questioning.  See Taylor, 17 F.3d at 340.  For the foregoing reasons, Williams' Sixth Amendment rights were not violated by the district court's ruling that limited his cross-examination of two government witnesses.

V.    Sentencing

19

The final question before this Court is whether it was an abuse of discretion to impose a sentence of five life terms to run concurrently. [DE-154 at 2] We hold that it was not.

Williams' sole contention is that the sentence is substantively unreasonable because "the sentence failed to take adequate account of Williams' prior drug addiction and the role it played in the over representation of the seriousness of his criminal past when calculating his criminal history." [Appellant Brief at 50].[12]  In other words, Williams challenges his sentence on the basis of § 3553(a)(1), which requires the sentencing court to consider the nature and the circumstances of the offense and the history and characteristics of the defendant.

We review the reasonableness of a sentence under an abuse of discretion standard of review.  See Gall v. United States, 552 U.S. 38, 51 (2007).  The party challenging the sentence has the burden of establishing that the sentence was unreasonable based on the record and the factors set forth in § 3553(a).  United States v. McBride, 511 F.3d 1293, 1297 (11th Cir. 2007).  A district court's sentence need not be the most appropriate one, but rather need only be a reasonable one.  United States v. Irey, 612 F.3d 1160, 1191 (11th Cir. 2010) (en banc).

---

[12] Williams does not contest the procedural correctness of his sentence.  Nevertheless, we note that the district court complied with all procedural requirements, including correctly calculating the Guidelines range, clearly stating its understanding that the Guidelines are not mandatory, stating that it was required to consider the § 3553(a) factors, and stating the facts and considerations it relied upon in reaching the sentence.

20

Moreover, "a district court need not account for every § 3553(a) factor, nor must it discuss each factor and the role that it played in sentencing." McBride, 511 F.3d at 1297.

Here, the district court stated during sentencing that Williams had been involved with the use and sale of drugs throughout his life. Thus, there is simply no reason to believe that the court did not consider his history with drugs in setting the sentence. Additionally, Williams' criminal history is substantial (he received twenty-eight criminal history points, fifteen more than is necessary to place him in criminal history category VI, the highest category), and many of Williams' prior convictions did not involve drugs. Notably, Williams' Guidelines sentence would still be a life term even if he had no criminal history, due to his offense level of 43. See United States Sentencing Guidelines, Sentencing Table, Ch. 5, Pt. A.

In addition, the record clearly reflects that the district court considered other § 3553(a) factors in imposing a total sentence of life imprisonment, and nothing in the record demonstrates that his sentence is unreasonable based on those factors. As the district court observed during the sentencing hearing, Williams' offense involved exploiting or attempting to exploit six minor girls, all of whom were demonstrably vulnerable, by having them engage in sexual acts for money. This was a serious crime, and the court was entitled to weigh that factor in favor of a

21

Guidelines sentence.  The court also noted, based on the victims' statements, that Williams' actions caused the girls tremendous psychological harm.  Finally, the court observed that Williams showed no remorse and continued to deny, up to and through sentencing, the charges against him.

Based on the totality of circumstances presented in this case, a Guidelines sentence of life imprisonment is substantively reasonable and due to be affirmed.

## CONCLUSION

Williams' conviction and sentence are AFFIRMED.